UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

VICTOR PEDROZA,

                Plaintiff,

-against-

SERGEANT PANZARELLA, et al.,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

18-CV-03320 (PMH)

PHILIP M. HALPERN, United States District Judge:

      Victor Pedroza ("Plaintiff"), an inmate at Marcy Correctional Facility, brings this action under 42 U.S.C. § 1983 against Sergeant Mario Panzarella ("Panzarella"), Sergeant Todd Paroline ("Paroline"), Correctional Officer Victor Rodriguez ("V. Rodriguez"), Correctional Officer Douglas Beasley ("Beasley"), Correctional Officer Nelson Rodriguez ("N. Rodriguez"), and Correctional Officer Tikisha Rogers ("Rogers," and collectively, "Defendants"). Specifically, Plaintiff alleges that the remaining Defendants used excessive force against him in violation of the Eighth Amendment while he was an inmate at Sing Sing Correctional Facility ("Sing Sing").[1]

      Plaintiff, who is now represented by counsel,[2] commenced this action *pro se* and *in forma pauperis*. His original complaint was docketed on April 16, 2018. (Doc. 2). His Amended Complaint was docketed on September 4, 2018. (Doc. 25). All six defendants answered the Amended Complaint on January 15, 2019. (Docs. 47-52). The case was reassigned from Judge Briccetti to me on March 17, 2020.

---

[1] Initially, Plaintiff brought claims for excessive force and inadequate medical care. But on November 2, 2020, the parties filed a partial stipulation of dismissal with prejudice of "any and all claims relating to [P]laintiff's allegations that his constitutional rights were violated regarding inadequate medical care." (Doc. 86). Therefore, only Plaintiff's excessive force claim remains to be adjudicated.

[2] Plaintiff's counsel appeared in this action on June 28, 2019. (Doc. 71).

On November 18, 2020, Defendants requested permission to move for summary judgment on Plaintiff's excessive force claim. (Doc. 89). At a conference held on December 21, 2020, the Court granted their request. Defendants filed their notice of motion on February 5, 2020. (Doc. 92). All moving papers were filed on March 19, 2021. (Doc. 99, "Defs. Br."; Doc. 100, "Pl. Opp."; Doc. 101, "Defs. Reply").[3]

## BACKGROUND

The facts recited herein are drawn from the Amended Complaint; Defendants' "Statement of Undisputed Facts Per Fed. R. Civ. P. 56.1" (Doc. 89-1, "Defs. 56.1 Stmt."); Plaintiff's "Response to Rule 56.1 Statement of Defendant" (Doc. 89-2, "Pl. 56.1 Stmt."); Plaintiff's opposition brief (*see* Pl. Opp.); and the Declaration of Janice Powers (Doc. 94, "Powers Decl."), along with the exhibits annexed thereto, which include copies of, *inter alia*: Declaration of Panzarella (Doc. 94-1, "Powers Decl. Ex. A"); Declaration of Beasley (Doc. 94-2, "Powers Decl. Ex. B"); Declaration of Paroline (Doc. 94-3, "Powers Decl. Ex. C"); Declaration of V. Rodriguez (Doc. 94-4, "Powers Decl. Ex. D"); Declaration of N. Rodriguez (Doc. 94-5, "Powers Decl. Ex. E"); Declaration of Rogers (Doc. 94-6, "Powers Decl. Ex. F"); Inmate Injury Report (Doc. 94-7, "Powers Decl. Ex. G"); Plaintiff's February 21, 2020 deposition transcript (Doc. 94-8, "Powers Decl. Ex. H"); Logbooks (Doc. 94-9, "Powers Decl. Ex. I"); Use of Force Packet with Injury Reports (Doc. 94-10, "Powers Decl. Ex. J"); Plaintiff's medical records from Westchester Medical Center ("WMC") (Doc. 94-13, "Powers Decl. Ex. L"); Workers Compensation Sheet (Doc. 94-14, "Powers Decl. Ex. M"); and Plaintiff's disciplinary records (Doc. 94-15, "Powers Decl. Ex. N").

---

[3] Defendants filed a Memorandum of Law in Support of the Motion for Summary Judgment on February 5, 2021 (Doc. 93) and filed an Amended Memorandum of Law on March 19, 2021 (Defs. Br.). Defendants filed the amended document to correct "errors in the paginations and errors in the party name on page 12" of the original document. (Doc. 98). Defendants represented that "[t]he substance of the memorandum has not changed," and that "the amended version only corrects typographical errors in the document." (*Id.*).

Plaintiff was transferred in January 2016 from Downstate Correctional Facility to Sing Sing. (Powers Decl. Ex. H at 7:7-9). He entered Sing Sing as a disciplinary inmate because of his extensive disciplinary record, which included several instances of violent conduct. (Powers Decl. Ex. N at 001-003). As a disciplinary inmate, Plaintiff was housed in Sing Sing's Special Housing Unit ("SHU"). (Powers Decl. Ex. H at 9:2-4, 9:22-23, 10:3-7; Powers Decl. Ex. A ¶ 4).

Due to Plaintiff's status as a SHU inmate, his movement within the facility was restricted. (Powers Decl. Ex. A ¶ 4). He could leave his cell for medical treatment, but only with a prison official escorting him. (*Id.*). While a SHU inmate is being escorted, all movement throughout the facility halts. (*Id.*). Any areas through which the inmate must travel are locked down until the inmate clears that area and reaches his destination. (*Id.*). Movement in the facility does not resume until the inmate is returned to his cell. (*Id.*).

On the morning of July 8, 2016, Plaintiff, who suffers from chronic asthma, was experiencing chest pain. (Powers Decl. Ex. H at 21:15, 32:22). He was escorted by N. Rodriguez to the clinic at 8:50 a.m. to receive medical treatment. (Defs. 56.1 Stmt. § A ¶ 4; Pl. 56.1 Stmt. § A ¶ 4). While being escorted, Plaintiff was handcuffed and chained at his waist. (Defs. 56.1 Stmt. § A ¶ 5; Pl. 56.1 Stmt. § A ¶ 5).

Upon arriving at the clinic, Plaintiff recognized his uncle, who was in the clinic's waiting area (otherwise known as the "bullpen"). (Powers Decl. Ex. H at 38:15-16; Defs. 56.1 Stmt. § A ¶ 10; Pl. 56.1 Stmt. § A ¶ 10). N. Rodriguez remained in the clinic throughout Plaintiff's visit. (Powers Decl. Ex. H at 37:4-7). Panzarella was also in the clinic, as he was assigned to oversee the movement and transportation of inmates receiving medical care. (Powers Decl. Ex. A ¶ 5). Plaintiff received a nebulizer treatment from Nurse Rick, a medical provider, which took approximately ten to fifteen minutes. (Powers Decl. Ex. H at 37:8-10, 37:21-22, 40:20-21; Defs.

3

56.1 Stmt. § A ¶ 6; Pl. 56.1 Stmt. § A ¶ 6). The events following the completion of Plaintiff's treatment are in dispute.

According to Plaintiff, he complained to Nurse Rick that he was still having chest pains and requested further treatment. (Powers Decl. Ex. H at 41:12-15). Nurse Rick refused to give him more treatment and told N. Rodriguez to "get [Plaintiff] the . . . out of the clinic." (*Id*. at 41:19-22). N. Rodriguez came over and told Plaintiff to leave the clinic. (*Id*. at 43:3-7). But rather than leave the clinic, Plaintiff asked to speak to the sergeants, one of whom subsequently "called [him] the N-word." (*Id*. at 43:9-10,16-20). Then, Panzarella, Rogers, and N. Rodriguez "dragged" Plaintiff out of the clinic. (*Id*. at 44:17-18). Once outside the clinic, Paroline, Beasley, and V. Rodriguez arrived on the scene. (*Id*. at 49:2-6). All Defendants then began kicking Plaintiff in the face, punching him in the ribs and face, and twisting his ankle. (*Id*. at 49:8-9, 50:11-14). Plaintiff was lying face down on the floor, so he could not discern the nature of each Defendant's involvement in the beating. (*Id*. at 50:15-24). Panzarella, Paroline, Rogers, and Beasley subsequently carried Plaintiff back into the clinic on a stretcher so he could receive treatment for facial abrasions. (*Id*. at 51:2-11, 52:9-10).

Defendants offer a different version of events. According to them, at around 8:30 a.m., once Plaintiff's nebulizer treatment was complete, he began complaining loudly about not receiving a new pair of eyeglasses. (Powers Decl. Ex. A ¶ 6; Powers Decl. Ex. E ¶ 2). Nurse Rick asked Panzarella to order Plaintiff to leave the clinic. (Powers Decl. Ex. H at 41:21-25, 42:2; Powers Decl. Ex. E ¶ 2). Panzarella repeatedly ordered Plaintiff to leave. (Powers Decl. Ex. A ¶ 7). Plaintiff did not comply with those orders. (*Id*.). Eventually, Plaintiff appeared to walk towards the clinic's exit; but instead of leaving, he started conversing with his uncle, who was waiting in the bullpen. (*Id*.). Panzarella told Plaintiff he could not speak with his uncle, ordered Plaintiff to

leave, and stepped in front of Plaintiff to prevent him from moving further towards the bullpen. (*Id*. ¶ 8). Finally, Plaintiff began to exit the clinic; but as he passed through the doorway, he laid down on the floor with half his body inside the clinic, and the other half outside in the hallway. (*Id*.). Panzarella repeatedly ordered Plaintiff to get up off the floor. (*Id*. ¶ 9). But Plaintiff continued yelling, cursing, and conversing with his uncle. (*Id*.). Plaintiff—who, at the time, was 6'5'' and weighed over 200 pounds—also threatened to ". . . up" Panzarella and other officers once his handcuffs came off. (*Id*.; Powers Decl. Ex. B ¶ 3; Powers Decl. Ex. C ¶ 2; Defs. 56.1 Stmt. § A ¶ 3; Pl. 56.1 Stmt. § A ¶ 3). Panzarella then told N. Rodriguez to clear the area of other inmates and told Rogers (who was stationed nearby) to secure all gates and hold all movement in the area. (Powers Decl. Ex. E ¶ 3; Powers Decl. Ex. F ¶ 2).

Next, Panzarella walked behind Plaintiff, hooked his arms around Plaintiff's shoulders, and pulled Plaintiff out of the doorway and into the hallway. (Powers Decl. Ex. A ¶ 9). Once they were in the hallway, Panzarella ordered Plaintiff to calm down, so he could escort him back to the SHU. (*Id*. ¶ 10). But Plaintiff continued to yell and scream while lying on the floor. (*Id*.). Plaintiff then "scooted forward while in a seated position on his buttocks" towards Panzarella and kicked him in the left shin. (*Id*.; Powers Decl. Ex. B ¶ 3; Powers Decl. Ex. C ¶ 2). After Plaintiff kicked Panzarella, Beasley, who was assigned to a post near the hallway outside the clinic, came over to assist. Paroline and V. Rodriguez also arrived on the scene at that point. (Powers Decl. Ex. D ¶ 3; Powers Decl. Ex. C ¶ 3). While Beasley held Plaintiff's legs, Paroline grabbed his shoulders from behind, and caused him to lay face up on the floor. (Powers Decl. Ex. B ¶ 4; Powers Decl. Ex. C ¶ 3). Then, with V. Rodriguez's assistance, they turned Plaintiff onto his stomach. (Powers Decl. Ex. B ¶ 4; Powers Decl. Ex. C ¶ 3). Once Plaintiff was on his stomach, Beasley placed him in a figure four leg lock to prevent any further kicking. (Powers Decl. Ex. B ¶ 4; Powers Decl. Ex. C ¶

3; Powers Decl. Ex. D ¶ 3). Beasley maintained the hold while V. Rodriguez placed leg irons on Plaintiff's ankles. (Powers Decl. Ex. B ¶ 4; Powers Decl. Ex. D ¶ 3). Throughout this process, Plaintiff repeatedly banged his head against the floor. (Powers Decl. Ex. A ¶ 10; Powers Decl. Ex B ¶ 4; Powers Decl. Ex. C ¶ 4). Once the leg irons were in place, Beasley and Paroline rolled Plaintiff onto his side to prevent him from continuing to bang his head. (Powers Decl. Ex. C ¶ 4). They then placed Plaintiff on a stretcher and, with the assistance of V. Rodriguez, carried him back into the clinic for medical evaluation at about 9:15 a.m. (Powers Decl. Ex. A ¶ 10; Powers Decl. Ex. B ¶ 4; Powers Decl. Ex. C ¶ 3; Powers Decl. Ex. E ¶ 4; Defs. 56.1 Stmt. § A ¶ 29-30; Pl. 56.1 Stmt. § A ¶ 29-30). Plaintiff refused to cooperate with the nurse who tried to treat him. (Powers Decl. Ex. A ¶ 10). Neither N. Rodriguez nor Rogers were involved in restraining Plaintiff. (Powers Decl. Ex. E ¶ 5; Powers Decl. Ex. F ¶ 1).

The remaining facts are undisputed. Following the incident, at around 10:00 a.m., N. Rodriguez escorted Plaintiff back to the SHU (Powers Decl. Ex. A ¶ 11; Powers Decl. Ex. E ¶ 4). Later that night, at 8:33 p.m., Plaintiff complained of chest, back, and cheekbone pain. (Defs. 56.1 Stmt. § B ¶ 10; Pl. 56.1 Stmt. § B ¶ 10; Powers Decl. Ex. H at 53:8-11, 53:13-17, 54:23-25). At 9:50 p.m., he was taken to WMC for medical evaluation. (Defs. 56.1 Stmt. § B ¶ 11; Pl. 56.1 Stmt. § B ¶ 11). At WMC, Plaintiff also reported that he lost vision in his left eye from being punched. (Defs. 56.1 Stmt. § B ¶ 13; Pl. 56.1 Stmt. § B ¶ 13). WMC noted bruising and minimal swelling around Plaintiff's left eye, but no palpable bony defect or other remarkable findings. (Defs. 56.1 Stmt. § B ¶ 14; Pl. 56.1 Stmt. § B ¶ 14; Powers Decl. Ex. L at DEF010). He was evaluated "multiple times" for loss of vision, but none was observed. (Powers Decl. Ex. L at DEF007, DEF013). Ultimately, Plaintiff was diagnosed only with acute facial contusions (i.e., bruises) and acute facial abrasions (i.e., scrapes to the outer skin layers). (Defs. 56.1 Stmt. § B ¶ 18; Pl. 56.1 Stmt. § B ¶

18). He had no broken bones and was discharged without prescription medication. (Powers Decl. Ex. L at DEF007, DEF010, DEF019).

Multiple prison officials sustained injuries during the incident. Beasley injured his wrist while restraining Plaintiff. (Powers Decl. Ex. B ¶ 4). He was unable to return to work until August 30, 2016, and once he did, he remained on light duty for several months. (*Id*.). V. Rodriguez, who injured his shoulder while lifting Plaintiff onto the stretcher, was unable to work for nearly a year following the incident. (Powers Decl. Ex. D ¶ 4; Powers Decl. Ex. J at 0018; Powers Decl. Ex. M). Panzarella suffered a left shin scrape from being kicked. (Powers Decl. Ex. J at 012).

Consequently, Panzarella issued a misbehavior report charging Plaintiff with assault on staff, refusing a direct order, violent conduct, and threats. (Powers Decl. Ex. A ¶ 11). A disciplinary hearing was held, and Plaintiff was found guilty on all charges. (*Id*.; Powers Decl. Ex. H at 67:4-16, 69:15-25). As punishment, Plaintiff was given 365 days in the SHU. (Defs. 56.1 Stmt. § A ¶ 33; Pl. 56.1 Stmt. § A ¶ 33). He also lost 72 months of good time on his sentence. (Defs. 56.1 Stmt. § A ¶ 34; Pl. 56.1 Stmt. § A ¶ 34).

## **STANDARD OF REVIEW**

Under Federal Rule of Civil Procedure 56, a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' if it 'might affect the outcome of the suit under the governing law,' and is genuinely in dispute 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Liverpool v. Davis*, 442 F. Supp. 3d 714, 722 (S.D.N.Y. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "'Factual disputes that are irrelevant or unnecessary' are not material and thus cannot preclude summary judgment." *Sood v. Rampersaud*, No. 12-CV-05486, 2013 WL 1681261, at *1

(S.D.N.Y. Apr. 17, 2013) (quoting *Anderson*, 477 U.S. at 248). The Court's duty, when determining whether summary judgment is appropriate, "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Id*. (quoting *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 60 (2d Cir. 2010)). Indeed, the Court's function is not to determine the truth or weigh the evidence; the task is material issue spotting, not material issue determining. Therefore, "where there is an absence of sufficient proof as to one essential element of a claim, any factual disputes with respect to other elements of the claim are immaterial . . . ." *Bellotto v. Cty. of Orange*, 248 F. App'x 232, 234 (2d Cir. 2007) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 281 (2d Cir. 2006)). Claims simply cannot proceed in the absence of sufficient proof as to an essential element.

"It is the movant's burden to show that no genuine factual dispute exists," *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)), and a court must "resolve all ambiguities and draw all reasonable inferences in the non-movant's favor." *Id*. (citing *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003)). Once the movant has met its burden, the non-movant "must come forward with specific facts showing that there is a genuine issue for trial." *Liverpool*, 442 F. Supp. 3d at 722 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). The non-movant cannot defeat a summary judgment motion by relying on "mere speculation or conjecture as to the true nature of the facts . . . ." *Id*. (quoting *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986)). However, "[i]f there is any evidence from which a reasonable inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, summary judgment is improper." *Sood*, 2013 WL 1681261, at *2 (citing *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004)).

Should there be no genuine issue of material fact, the movant must establish also its "entitlement to judgment as a matter of law." *In re Davis New York Venture Fund Fee Litig.*, 805 F. App'x 79, 80 (2d Cir. 2020) (quoting *FIH, LLC v. Found. Capital Partners LLC*, 920 F.3d 134, 140 (2d Cir. 2019)). Stated simply, the movant must establish that the law favors the judgment sought. *Gonzalez v. Rutherford Corp.*, 881 F. Supp. 829, 834 (E.D.N.Y. 1995) (explaining "that summary judgment is appropriate only when . . . law supports the moving party"); *Linares v. City of White Plains*, 773 F. Supp. 559, 560 (S.D.N.Y. 1991) (explaining that summary judgment is appropriate when "the law so favors the moving party that entry of judgment in favor of the movant . . . is proper").

## ANALYSIS

I. Section 1983

Section 1983 provides, in pertinent part, that "[e]very person who, under color of any statute . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983. "[T]his language does not create substantive rights; rather, it creates a mechanism by which individuals can vindicate the violation of rights secured elsewhere." *Santucci v. Levine*, No. 17-CV-10204, 2021 WL 76337, at *3 (S.D.N.Y. Jan. 8, 2021).

II. Plaintiff's Excessive Force Claim

Given Plaintiff's status as a convicted prisoner at the time of the July 8, 2016 incident, his excessive force claim implicates the Eighth Amendment's Cruel and Unusual Punishments Clause. *See Whitley v. Albers*, 475 U.S. 312, 327 (1986). "A prison official's use of force violates the Eighth Amendment when, objectively, 'the alleged punishment [was] . . . sufficiently serious,' and, subjectively, 'the prison official . . . [had] a sufficiently culpable state of mind.'" *Torres v.*

*City of New York*, No. 17-CV-06604, 2019 WL 7602181, at *6 (S.D.N.Y. Aug. 14, 2019) (quoting *Boddie v. Schnieder*, 105 F.3d 857, 861 (2d Cir. 1997)), *adopted by* 2019 WL 4784756 (S.D.N.Y. Sept. 30, 2019).

"The objective component of a claim of cruel and unusual punishment focuses on the harm done, in light of 'contemporary standards of decency." *Wright v. Goord*, 554 F.3d 255, 268 (2d Cir. 2009). In assessing this component, the Court must ask whether "the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." *Id*. (quoting *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)).

"The subjective component of the claim requires a showing that the defendant 'had the necessary level of culpability, shown by actions characterized by wantonness' in light of the particular circumstances surrounding the challenged conduct." *Wright*, 554 F.3d at 268 (quoting *Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir. 1999)). "When prison officials are accused of using excessive force, the 'wantonness' issue turns on 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Id*. (quoting *Hudson*, 503 U.S. at 7).

Courts must also bear in mind that "[n]ot every push or shove, even if it later may seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights," *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993) (citation omitted), and "not . . . every malevolent touch by a prison guard gives rise to a federal cause of action," *Hudson*, 503 U.S. at 9. "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Id*. at 9-10.

Plaintiff testified at his deposition that, on July 8, 2016, Defendants punched him in the ribs and face, kicked him in the face, and twisted his ankle, (Powers Decl. Ex. H at 49:8-9, 50:11-14), and that he subsequently experienced chest, cheekbone, and back pain, as well as vision loss, (Defs. 56.1 Stmt. § B ¶ 10, 13; Pl. 56.1 Stmt. § B ¶ 10, 13; Powers Decl. Ex. H at 53:8-11, 53:13-17, 54:23-25).[4] The medical records from WMC, however, tell a different tale. According to these records, Plaintiff did not suffer any chest, cheekbone, or back injuries. His only diagnosed injuries were facial bruises and scrapes, for which he was advised to use ice, acetaminophen/ibuprofen, and antibiotic ointment as treatment. (Defs. 56.1 Stmt. § B ¶ 18; Pl. 56.1 Stmt. § B ¶ 18; Powers Decl. Ex. L at DEF017-018). Moreover, after receiving multiple eye assessments, no vision loss was detected, and Plaintiff himself eventually denied experiencing any. (Powers Decl. Ex. L at DEF007, DEF013).

Plaintiff's scrapes and bruises are the sorts of minimal injuries that routinely support a finding of a *de minimis* use of force, and therefore fail to satisfy the objective prong for claims of Eighth Amendment violations. *See, e.g.*, *Adilovic v. Cty. of Westchester*, No. 08-CV-10971, 2011 WL 2893101, at *7 (S.D.N.Y. July 14, 2011) (finding *de minimis* use of force where prison official's actions resulted in superficial scrapes); *James v. Phillips*, No. 05-CV-01539, 2008 WL 1700125, at *4-5 (S.D.N.Y. Apr. 9, 2008) (finding *de minimis* use of force when prison guard shoved inmate into a door which resulted in swelling of inmate's chin); *Sprau v. Coughlin*, 997 F. Supp. 390, 394 (W.D.N.Y. 1998) (finding *de minimis* use of force where inmate was grabbed from

---

[4] Defendants argue that summary judgment should be granted with respect to Plaintiff's excessive force claim against N. Rodriguez and Rogers for lack of personal involvement. (Defs. Br. at 10-11). Plaintiff does not oppose this argument. (Pl. Opp. at 2; Defs. Reply at 1). Indeed, the record supports the fact that neither officer physically interacted with Plaintiff on July 8, 2016. (Powers Decl. Ex. E ¶ 5; Powers Decl. Ex. F ¶ 1). Accordingly, the Court hereby grants summary judgment with respect to Plaintiff's excessive force claim against N. Rodriguez and Rogers. *See Cruz v. City of New York*, 232 F. Supp. 3d 438, 452 (S.D.N.Y. 2017) (granting summary judgment for defendant who was not "personally involved in the acts allegedly constituting excessive force").

behind the neck and hit several times across the neck, face and eye, resulting in small bump under inmate's eye); *DeArmas v. Jaycox*, No. 92-CV-06139, 1993 WL 37501, at *4 (S.D.N.Y. Feb. 8, 1993) (finding plaintiff's allegation that he suffered a bruise and injured right knee after being punched once and kicked once constituted *de minimis* use of force).

That is not to say that minor injuries can never satisfy the objective prong. They may do so "where the use of force is 'repugnant to the conscience of mankind.'" *Adilovic*, 2011 WL 2893101, at *7 (S.D.N.Y. July 14, 2011) (quoting *Sims v. Artuz*, 230 F.3d 14, 21 (2d Cir. 2000)). But here, the alleged force that inflicted Plaintiff's bruises and superficial scrapes was not "repugnant," particularly given the context in which Defendants used such force. *Id*. Indeed, Defendants were tasked with restraining Plaintiff—a physically imposing inmate who had a documented history of violent conduct—as he refused to comply with their orders and threatened their safety. (Defs. 56.1 Stmt. § A ¶ 3; Pl. 56.1 Stmt. § A ¶ 3; Powers Decl. Ex. N; Powers Decl. Ex. B ¶ 3; Powers Decl. Ex. C ¶ 2).

At bottom, "[t]he undisputed evidence demonstrates 'the insignificance of Plaintiff's injuries and the fact that the medical records completely undermine Plaintiff's allegations' that [Defendants'] use of force was more than *de minimis*." *Perry v. Stephens*, 659 F. Supp. 2d 577, 583 (S.D.N.Y. 2009) (quoting *Larkins v. Selsky*, No. 04-CV-05900, 2008 WL 2736015, at *5 (S.D.N.Y. July 7, 2008) (brackets omitted)); *see also Gashi v. Cty. of Westchester*, No. 02-CV-06934, 2007 WL 749684, at *6 (S.D.N.Y. Mar. 12, 2007) ("The insignificance of plaintiff's injuries and the fact that the medical records completely undermine his allegations, as to the ferociousness of the violence allegedly perpetrated against him, warrant a finding that the force used was *de minimis* as a matter of law."); *Bove v. New York City*, No. 98-CV-08800, 1999 WL 595620, at *6 (S.D.N.Y. Aug. 6, 1999) ("Given the conflicting accounts of what exactly happened

outside of defendant Blinn's door in the early morning of December 18, 1995—the plaintiff's allegations of a brutal beating versus the defendants' view that no such incident took place—it might appear at first blush that this factual dispute would preclude summary judgment. However, the plaintiff's alleged injuries that are supported by the objective hospital records lead me to conclude that, as a matter of law, the force—if any—used by the NYPD on the night in question was at worst, *de minimis*, and insufficient to shock this Court's conscience.").

Accordingly, Plaintiff fails to satisfy the objective prong of his Eighth Amendment claim.

Turning to the subjective prong, Plaintiff fails to offer any evidence that Defendants acted "maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7. Aside from self-serving allegations that are belied by medical records, Plaintiff fails to show that Defendants sought to wantonly inflict pain. To the contrary, the undisputed facts demonstrate Defendants' "good-faith effort to . . . restore discipline" when faced with a recalcitrant inmate. *Id*. As such, Defendants' use of force, *de minimis* as it was, cannot be said to evince "a 'wanton' state of mind." *Perry*, 659 F. Supp. 2d at 583.

Accordingly, Plaintiff fails to satisfy the subjective prong of his Eighth Amendment claim.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED and the Amended Complaint is dismissed with prejudice. The Clerk of the Court is respectfully directed to (1) terminate the motion sequences pending at Doc. 89 and Doc. 92; and (2) close this case.

                                                  **SO ORDERED:**

Dated: White Plains, New York  
         August 16, 2021

                                                  _____  
                                                  Philip M. Halpern  
                                                  United States District Judge